IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GLORIA SOTUYA FLESNER,           §
                                 §
        Plaintiff,               §
                                 §
v.                               §        CIVIL ACTION NO. H-10-3758
                                 §
WILLIAM G. FLESNER,              §
INDIVIDUALLY AND AS              §
INDEPENDENT EXECUTOR OF THE      §
ESTATE OF WILLIAM M. FLESNER,    §
DECEASED, AND MAURINE SAN        §
FRANCIS,                         §
                                 §
        Defendants.              §

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's Cross-motion for Summary Judgment (Doc. 38) and Defendants' Cross-motion for Summary Judgment (Doc. 39). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Plaintiff's cross-motion for summary judgment and **GRANTS IN PART** and **DENIES IN PART** Defendants' cross-motion for summary judgment.

## I. Case Background

### A. Factual History

William Martin Flesner ("decedent") began working for Logix Communications, Inc. ("Logix") in 1998.[2] Several years later, on

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Doc. 31.

[2] See Doc. 39-1, Ex. B to Defs.' Cross Mot. for Summ. J., Reliance Insurance Policy Group Enrollment Form.

February 6, 2002, the decedent married Plaintiff.[3] Through a
voluntary term life insurance program offered by his employer, the
decedent obtained life insurance policies with Reliance Standard
Life Insurance Company ("Reliance") and Colonial Life and Accident
Insurance Company ("Colonial") in 2002 and 2005, respectively.[4]
Plaintiff was designated as the primary beneficiary under both
policies.[5] The decedent did not name any contingent beneficiaries.[6]

On or about November 5, 2009, Plaintiff and the decedent were
divorced and the 221st Judicial District Court in Montgomery County,
Texas, issued a final divorce decree.[7] In the divorce decree,
Plaintiff was divested of "all right, title, interest, and claim in
and to" the property awarded to decedent as his sole and separate
property, including:

> The sums, whether matured or unmatured, accrued or
> unaccrued, vested or otherwise, together with all
> increases thereof, the proceeds therefrom, and any
> other rights related to any profitsharing plan,
> retirement plan, Keogh plan, pension plan, employee
> stock option plan, 401(k) plan, employee savings
> plan, accrued unpaid bonuses, disability plan, or
> other benefits existing by reason of the husband's

---

[3]      See Doc. 1, Pl.'s Compl., p. 2.

[4]      See Doc. 39-1, Ex. B to Defs.' Cross Mot. for Summ. J., Reliance
Insurance Policy Group Enrollment Form; Doc. 39-2, Ex. C1 to Defs.' Cross Mot.
for Summ. J., Colonial Insurance Policy.

[5]      See Doc. 39-1, Ex. B to Defs.' Cross Mot. for Summ. J.,Reliance
Insurance Policy Group Enrollment Form; Doc. 39-2, Ex. C1 to Defs.' Cross Mot.
for Summ. J., Colonial Insurance Policy, p. CL 0008.

[6]      Id.

[7]      See Doc. 39-1, Ex. A to Defs.' Cross Mot. for Summ. J., Divorce
Decree.

past, present, or future employment.[8]
Almost six months after the divorce, on April 26, 2010, the
decedent passed away without having changed the designated
beneficiary under his life insurance policies.[9]

Plaintiff and Defendants each made claims to the proceeds of
the decedent's insurance policies.[10] This lawsuit was filed shortly
thereafter.

## B. Procedural History

Plaintiff initiated this civil action on October 12, 2010,
naming William G. Flesner, Reliance, Colonial, and ING Life
Insurance and Annuity Company ("ING") as defendants.[11] Two days
later, on October 14, 2010, William G. Flesner, individually and in
his capacity as the executor of the decedent's estate, and Maurine
San Francis filed a claim against Plaintiff in the 418th Judicial
District of Montgomery County, Texas, alleging breach of contract
and seeking a declaratory judgment entitling them to decedent's
life insurance proceeds.[12] Plaintiff removed the case pending in
the 418th Judicial District Court to this court on the basis of
federal question jurisdiction and moved to consolidate that case

---

[8]   Id.

[9]   See Doc. 1, Pl.'s Compl., ¶ 9.

[10]   See Doc. 6, Colonial's Ans. to Pl.'s Compl., ¶¶ 41-43; Doc. 12,
Reliance's Ans. to Pl.'s Compl., ¶ 20.

[11]   See Doc. 1, Pl.'s Compl.

[12]   See Doc. 11, Pl.'s Not. of Remand, Orig. Pet.

with the present lawsuit.[13]   Although Defendants moved to remand the case back to state court, the court granted Defendants' subsequent motion to withdraw the motion to remand.[14]

On October 27, 2010, the court dismissed ING without prejudice as a defendant in the suit.[15]   One day later, Colonial filed an answer and counterclaim to Plaintiff's complaint, a cross-claim against Defendant William G. Flesner, and counterclaims against Interpleader Defendants William G. Flesner and Maurine San Francis.[16]   Colonial further filed an unopposed motion to deposit the insurance funds of its policy with decedent into the court registry.[17]   On December 8, 2010, Reliance also filed an unopposed motion to deposit the insurance funds of its policy into the court registry.[18]   The court granted both motions to deposit funds on December 9, 2010.[19]   Upon depositing their respective funds, Colonial and Reliance were dismissed as defendants in the suit,

---

[13]    See Doc. 11, Pl.'s Not. of Remand.

[14]    See Doc. 35, Order Granting Defs.' Mot. to Withdraw Mot. to Remand; see also Doc. 20, Defs.' Mot. to Remand; Doc. 34, Defs.' Mot. to Withdraw Mot. to Remand.

[15]    See Doc. 4, Order of Dismissal as to Def. ING Life Insurance; see also Doc. 3, Pl.'s Not. of Dismissal as to ING Life Insurance.

[16]    See Doc. 6, Colonial's Ans. to Pl.'s Compl., Cross-Claim Against William G. Flesner, & Counterclaims Against Pl. and Defs.

[17]    See Doc. 8, Colonial's Unopp. Mot. to Deposit Funds into Ct. Registry

[18]    See Doc. 13, Reliance's Unopp. Mot. to Deposit Funds into Ct. Registry

[19]    See Doc. 14, Order Granting Colonial's Mot. to Deposit Funds into Ct. Registry; Doc. 15, Order Granting Reliance's Mot. to Deposit Funds into Ct. Registry

4

leaving William G. Flesner, in his individual capacity and as executor of the decedent's estate, and Maurine San Francis ("Defendants") as the sole remaining defendants.[20]

Plaintiff and Defendants filed the pending cross-motions for summary judgment on June 30, 2011.[21] Twenty days later, on July 20, 2011, Plaintiff responded to Defendants' motion and Defendants responded to Plaintiff's motion.[22]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at

---

[20]   See Doc. 19, Order Granting Reliance's Mot. to Dismiss; Doc. 25, Order Granting Colonial's Stipulation of Dismissal.

[21]   See Doc. 38, Pl.'s Cross Mot. for Summ. J.; Doc. 39, Defs.' Cross Mot. for Summ. J.

[22]   See Doc. 40, Pl.'s Resp. to Defs.' Cross Mot. for Summ. J.; Doc. 41, Defs.' Resp. to Pl.'s Cross Mot. for Summ. J.

250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  Analysis

The parties have filed cross-motions for summary judgment. Plaintiff contends that the Colonial and Reliance policies are governed by the Employee Retirement Income Security Act[23] ("ERISA") because they are part of an employee welfare benefit plan established and maintained by Logix.[24]   On the opposing side,

---

[23]      29 U.S.C. § 1001 et. seq.

[24]      ERISA defines an employee welfare benefit plan as:
         [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers,,

Defendants argue that the policies do not constitute an employee welfare benefit plan and thus fall outside the scope of ERISA.  In the alternative, Defendants contend that they are nonetheless entitled to the proceeds of the policies because of Plaintiff's breach of her contractual waiver to the proceeds pursuant to the final divorce decree issued by the 221st Judicial District Court on November 5, 2009.

Before turning to the merits of the summary judgment motions, however, the court addresses Defendants' contention that the court lacks subject matter jurisdiction over this federal question action.[25]

## A.    <u>The Reliance and Colonial Policies are Governed by ERISA</u>

The Fifth Circuit applies a three-prong test in determining whether a given insurance policy arrangement constitutes an employee benefit plan for purposes of ERISA.  <u>Shearer v. Southwest Serv. Life Ins. Co.</u>, 516 F.3d 276, 279 (5th Cir. 2008) (quoting <u>Peace v. Am. Gen. Life Ins. Co.</u>, 462 F.3d 437, 439 (5th Cir. 2006)). In order to qualify as an ERISA plan, the arrangement must be: "(1) a plan, (2) not excluded from ERISA coverage by the safe harbor provisions established by the Department of Labor, and (3)

_____

scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions.
29 U.S.C. § 1002(1).

[25]    <u>See</u> Doc. 21, Defs.' Ans. to Pl.'s Compl., pp. 1-2.

8

established or maintained by the employer with the intent to benefit employees." Id.  The parties concede the existence of a plan, but dispute whether the second and third prongs have been established as a matter of law.

Concerning the second prong of the analysis, a group-type insurance arrangement falls within the Department of Labor's safe-harbor provision, and is thus exempt from ERISA coverage, when: (1) the employer does not contribute to the plan; (2) participation in the plan is voluntary; (3) the employer's sole function in effecting the plan is to publicize the plan, collect premiums through payroll deduction or dues checkoffs, and remit those premiums to the insurer.  House v. Am. United Life Ins. Co., 499 F.3d 443, 449 (5th Cir. 2007); 29 C.F.R. § 2510.3-1(j).  Each element must be satisfied in order for the safe harbor provision to apply.  See House, 499 F.3d at 449.

In evaluating the third prong of the analysis, whether the plan is established and maintained by the employer, the court should focus on "the employer . . . and [its] involvement with the administration of the plan."  Gahn v. Allstate Life Ins. Co., 926 F.2d 1449, 1452 (5th Cir. 1991); see Hansen v. Continental Ins. Co., 940 F.2d 971, 978 (5th Cir. 1991).

### 1. Colonial Policy

The parties do not dispute that the Colonial insurance policy satisfies the first two elements of the safe-harbor provision.

However, the parties disagree as to whether the final element of the safe-harbor provision analysis is satisfied.

Defendants argue that the Colonial policy falls within the Department of Labor's safe-harbor provision and is therefore not governed by ERISA.  In support of their claim, Defendants direct the court's attention to the contractual terms of the Colonial policy.  Specifically, Defendants contend that provisions of the policy describing the Colonial policy as a contract between only the insured and Colonial, in conjunction with salary deduction serving as means by which the policy premiums are paid, are indicative of Logix's limited role in decedent's purchasing the policy.[26]  The court notes, however, that the policy also indicates that Logix was equipped to provide employee policy holders or beneficiaries with claim forms to submit to Colonial.[27]

Countering Defendants' position, Plaintiff argues that, as part of Logix's Welfare Benefit Plan, the Colonial policy qualifies as an ERISA plan and is therefore subject to ERISA governance.  See 29 U.S.C. § 1002(1).  In support, Plaintiff offers competent summary judgment evidence in the form of affidavit testimony from Gayle Wicker ("Wicker"), vice president of Logix's human resources

---

[26]    See Doc. 39-2, Ex. C1 to Defs.' Cross Mot. for Summ. J., Colonial Insurance Policy, pp. CL 0008, CL 0014.

[27]    See Doc. 39-2, Ex. C1 to Defs.' Cross Mot. for Summ. J., Colonial Insurance Policy, p. CL 0002.

department.[28]  Wicker testified in her affidavit as follows:

> In my role as benefits administrator, I oversee the issuance of Logix communications documents regarding these [Colonial and Reliance] policies, assist in the collection and remittance or premiums through payroll deductions, advise employees with regard to these benefits, and assist beneficiaries with the collection of proceeds.[29]

These duties go beyond the mere ministerial collection and remittance of policy premiums to the insurer.  See Hansen, 940 F.2d at 978(requiring "some meaningful degree of participation by the employer in the creation or administration of the plan").  The duties as set forth in Wicker's affidavit further indicate that Logix established and maintained the plans with the intent to provide insurance benefits to its employees.  Id. at 978 (concluding that an employer evinced intent by providing a benefits administrator to accept and submit claim forms and by presenting the policy in a booklet bearing the company's logo).  In the absence of competent summary judgment evidence that Logix's involvement with the Colonial policy was limited to ministerial tasks, the Colonial policy cannot fall under the protection of the safe-harbor provision and thus qualifies as an ERISA policy.

Defendants object to the affidavit on the grounds that Wicker is not qualified to determine whether the Colonial and Reliance policies are governed by ERISA.  The court agrees that Wicker's

---

[28]    See Doc. 38-3, Ex. C to Pl.'s Cross Mot. for Summ. J., Gayle Wicker Aff.

[29]    Id.

statement--" . . . I administer the employee welfare benefit plan that was established and maintaining for the benefit of the employees of Logix Communications.  This plan is governed by and subject to [ERISA]"--is conclusory and does not constitute competent summary judgment evidence.[30]  Nonetheless, Defendants have failed to produce competent summary judgment evidence in response to the remainder of Wicker's affidavit, particularly the portion in which Wicker describes her role concerning the policies.  The court therefore finds that the Colonial policy is governed by ERISA and jurisdiction is proper.[31]

### 2. Reliance Policy

Plaintiff argues that, as part of Logix's Welfare Benefit Plan, the Reliance policy qualifies as an ERISA plan.  See 29 U.S.C. § 1002(1).  As with the Colonial policy, Plaintiff offers Wicker's affidavit in support of her position.[32]  Defendants do not appear to contest Plaintiff's characterization of the Reliance policy in their cross-motion for summary judgment.[33]  In the absence of opposition by Defendants and for the reasons stated above in

---

[30]    Id.

[31]    Even if the Colonial policy were not governed by ERISA, as argued by Defendants, the court would nonetheless retain supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims arising from the Colonial policy. Moreover, the characterization of the Colonial policy would not alter the final result reached by the court.

[32]    See Doc. 38-3, Ex. C to Pl.'s Cross Mot. for Summ. J., Gayle Wicker Aff.

[33]    See Doc. 39, Defs.' Cross Mot. for Summ. J., p. 8.

concluding that the Colonial policy is governed by ERISA, the court finds that the Reliance policy is governed by ERISA. Jurisdiction in this court is therefore proper.

**B.  Supreme Court Case Law Requires Adherence to the Plan Documents of ERISA-Governed Insurance Policies**

Defendants contend that, regardless of whether the Colonial and Reliance policies are governed by ERISA, the Supreme Court's holding in Kennedy v. Plan Adm'r for Dupont Sav. and Inv. Plan, 555 U.S. 285 (2009), militates in favor of distributing the decedent's insurance proceeds to Defendants. Plaintiff responds that the Supreme Court's refusal to rule on "whether the Estate could have brought an action in state or federal court against [the designated beneficiary] to obtain the benefits after they were distributed" does not amount to the approval of such claims. Kennedy, 555 U.S. at 300 n. 10. Indeed, Plaintiff argues that she is entitled to the insurance proceeds pursuant to Kennedy because her contractual waiver under the divorce decree failed to conform with the terms dictated in the policy for changing a beneficiary designation. The court considers the impact of Kennedy to this action.

Kennedy involved a suit by the estate of an insured decedent against an ERISA plan administrator for the alleged wrongful disbursement of the plan's proceeds to the insured's ex-spouse. See 555 U.S. at 290. Before the couple divorced, the insured had designated his then-spouse as the sole beneficiary of his savings and investment plan ("SIP"). Id. at 289. Upon the couple's

divorce,  the ex-spouse purported to disclaim her interest to the proceeds of the SIP.  Id.  The insured, however, did not change the beneficiary designation in accordance with the terms of the SIP policy.  Id.  Relying on the plan documents, the plan administrator distributed the proceeds to the ex-spouse, thus giving rise to the plaintiff's lawsuit.  Id. at 290.

Prior to Kennedy, the federal common law doctrine of waiver was determinative in resolving the claims of alleged beneficiaries to the proceeds of an ERISA policy.  See Guardian Life Ins. Co. of Am. v. Finch, 395 F.3d 238, (5th Cir. 2004) (determining that a former spouse may waive her beneficiary interest to the proceeds of an ERISA policy through a subsequent divorce decree); Manning v. Hayes, 212 F.3d 866, 871 (5th Cir. 2000) ("the determination of who is entitled to proceeds of an ERISA plan providing life insurance benefits . . . may be properly defined by reference to the federal common law of waiver as applied to the particular facts of a case.").

However, advancing a rule of systematic uniformity with regard to the distribution of ERISA policy benefits, and overruling Fifth Circuit precedent, the Supreme Court held in Kennedy that the plan documents of an ERISA-governed policy control as against a contrary federal common law waiver.  555 U.S. at 301-03.  The Supreme Court further suggested that, contrary to Defendants' position here, interpleading the at-issue proceeds into the court's registry

14

would not discharge the obligation to adhere to the dictates of the ERISA plan documents and, in fact, would impede an administrator's ability "to look at the plan documents and records conforming to them to get clear distribution instructions." Id. at 301.

Here, the terms of the Colonial policy provide for changing a beneficiary as follows:

> Any accidental death benefits payable as a result of your death will be paid to your beneficiary. Your beneficiary is the person you named in the application as your beneficiary, unless it was changed at a later date . . . You can ask us to change your beneficiary at any time. Notify us, and we will send you a form to complete. The request must be witnessed by someone other than your present beneficiary or your proposed beneficiary and returned to us at our home office. The change must be approved by us. If approved, it will go into effect the day you sign the request.[34]

A provision of the Reliance policy regarding designated beneficiaries similarly states: "The Owner and Beneficiary, or either of them, may be changed as often as desired, during the Insured's lifetime, by Written Request, unless otherwise provided in this Policy."[35] A written request was defined as "a communication which must be in written form which satisfies us and is received at our Administrative Office."[36] It is undisputed that the decedent did not submit written changes to his beneficiary

---

[34]    Doc. 39-3, Ex. C2 to Defs.' Cross Mot. for Summ. J., Colonial Insurance Policy, pp. CL 0028-29.

[35]    Doc. 13-1, Ex. 1 to Reliance's Unopp. Mot. to Deposit Funds into Ct. Registry, Reliance Insurance Agreement, p. 3.

[36]    Id. at 2.

15

designation for either policy and that Plaintiff remained the designated beneficiary under both policies after the couple divorced.   Therefore, adhering to the plan documents of both policies, the court concludes that Plaintiff is the beneficiary of the proceeds under ERISA.

Summary judgment is therefore **GRANTED** in favor of Plaintiff with respect to the proper disbursement of the proceeds under ERISA.  The proceeds in the court registry should thus be disbursed to Plaintiff.   Once disbursed in accordance with the plan documents, however, the proceeds may be the subject of non-ERISA claims.  The court's inquiry is thus not at an end, in light of Defendants' state law counterclaim against Plaintiff for breach of contract.   Because Defendants' breach of contract claim is currently before the court, the court will resolve it here rather than pay the proceeds to Plaintiff and require Defendants to refile their claims in state court.

## C.   <u>State Law Governs Defendants' Breach of Contract Claim</u>

Defendants contend that Plaintiff contractually waived her rights to the proceeds of the decedent's Colonial and Reliance benefits in the November 5 divorce decree.  Plaintiff breached the terms of the divorce decree, Defendants allege, by seeking to claim the insurance proceeds of those policies and is therefore not entitled to retain the proceeds.   Plaintiff responds that Defendants' breach of contract claim is preempted by ERISA.   The

court addresses the latter contention first.

     The cases cited by Plaintiff to support her position concern ERISA preemption of breach of contract claims alleging the breach of the ERISA plan itself. See Medvigy v. Metro. Life Ins. Co., No. H-08-2623, 2010 WL 518774 (S.D. Tex. Feb. 2, 2010) (citing Ellis v. Liberty Life Assur. Co., 394 F.3d 262, 273-78 (5th Cir. 2004)). Plaintiff's reliance on these cases is misplaced because the proceeds have, in effect, been distributed to Plaintiff in accordance with ERISA by the court's granting of summary judgment. Further, Defendants' counterclaim is based on Plaintiff's breach of the divorce decree, not on breaches of the ERISA policies. Plaintiff does not cite, and the court has not located, binding precedent preempting state law claims for the proceeds of a distributed ERISA plan.

     Indeed, in Kennedy, the Supreme Court expressly declined to opine on the question presently before the court: whether an insured's estate could bring suit against the designated beneficiary of an ERISA policy after the funds had been distributed. 555 U.S. at 300 n.10 (comparing Boggs v. Boggs, 520 U.S. 833, 853 (1997) (holding that ERISA pension law preempted conflicting Louisiana community property law that allowed for the transfer of ERISA plan proceeds), with Sweebe v. Sweebe, 712 N.W.2d 708, 712-13 (2006) (distinguishing Boggs and holding that ERISA did not preempt a contractual waiver dispute after the ERISA proceeds

17

were disbursed); Pardee v. Pardee, 112 P.3d 308, 313-16 (2004) (distinguishing Boggs and finding that post-disbursement ERISA funds were no longer entitled to ERISA protection)).

The court notes, however, that courts have affirmed claims on post-disbursement ERISA funds in parallel contexts. See Guidry v. Sheet Metal Workers Nat. Pension Fund, 39 F.3d 1078, cert. denied, 514 U.S. 1063 [hereinafter Guidry II](affirming, en banc, the imposition of a collective trust on distributed ERISA proceeds); see also Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 841 (1988) (holding that state garnishment of ERISA proceeds after disbursement is not preempted by ERISA); Central States, Southeast & Southwest Pension Fund v. Howell, 227 F.3d 672, (6th Cir. 2000) (holding that ERISA does not preempt the imposition of a constructive trust after benefits have been distributed in accordance with plan documents).  In Guidry v. Sheet Metal Workers Nat. Pension Fund, 493 U.S. 365 (1990), for example, petitioner Guidry, a member and convicted embezzler of the respondent union, sought pension benefits pursuant to ERISA after agreeing to the entry of a money judgment for his embezzlement.  See id. at 368-69. The district court imposed a constructive trust on the plaintiff's pension benefits to satisfy the money judgment.  See id. at 370. The Supreme Court reversed, holding that ERISA's prohibition on the alienation of pension benefits precluded the imposition of a constructive trust. See id. at 372; 29 U.S.C. § 1056(d)(1).

18

On remand, the Tenth Circuit considered whether ERISA's anti-alienation provision prohibited garnishment of Guidry's pension benefits after disbursement.   See Guidry v. Sheet Metal Workers Int'l Ass., Local No. 9, 10 F.3d 700, 703 (10th Cir. 1993). Distinguishing between benefits in the plan and benefits distributed from the plan, in conjunction with the absence of statutory language or legislative intent indicating that ERISA applies to disbursed benefits, the court held that "ERISA provides no protection to funds paid to, and received by, the plan participant." Id. at 716.  On rehearing en banc, the appeals panel affirmed.   See Guidry II, 39 F.3d at 1083.  The Supreme Court denied certiorari.  Guidry v. Sheet Metal Workers' Nat. Pension Fund, 514 U.S. 1063 (1995).  Although the Supreme Court's denial of certiorari is not the equivalent of affirming the circuit's decision, it nonetheless indicates the absence of legal error in the circuit's analysis.  The court agrees with the reasoning of the Tenth and Sixth Circuits distinguishing between pre- and post-disbursement ERISA benefits.  The court thus turns to the merits of Defendants' breach of contract counterclaim.

To succeed on their breach of contract counterclaim, Defendants must show that: 1) a valid contract exists; 2) one party fully performed its obligations under the contract; 3)Plaintiff breached the contract; and 4) Defendants were damaged as a result of the breach.  Hovorka v. Cmty. Health Sys., Inc., 262 S.W.3d 503,

508-09 (Tex. App.--El Paso 2008, no pet.).   The parties do not contest that the divorce decree constitutes a valid and enforceable contract between Plaintiff and decedent.

> As previously noted, the divorce decree divested Plaintiff of:

>> [A]ll right, title, interest, and claim in and to . . . [t]he sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profitsharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment.[37]

It is undisputed that the decedent obtained the Colonial and Reliance policies through his employer, that the benefits of the policies necessarily "exist[ ] by reason of the husband's past, present, or future employment," and that Plaintiff made claims to the benefits of the Colonial and Reliance policies.[38]   Defendants allege that, by seeking to claim these benefits, Plaintiff breached the express terms of the divorce decree and damaged Defendants--who otherwise would have received the benefits--in the amount of the proceeds under the policies.   Plaintiff offers no competent summary judgment evidence to contest any of the elements of Defendants' breach of contract claim.

The court finds that Defendants have established, as a matter

---

[37]   Doc. 39-1, Ex. A to Defs.' Cross Mot. for Summ. J., Divorce Decree.

[38]   <u>Id.</u>

of law, that Plaintiff breached the divorce decree by claiming the benefits of the decedent's Colonial and Reliance policies.  Summary judgment in favor of Defendants is therefore **GRANTED** as to the breach of contract counterclaim.

**D.**   **Defendants' Recovery of Reasonable Attorneys' Fees**

Defendants seek to recover attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001.  This section of the code covers several types of claims, the only relevant one of which is breach of contract.  See Tex. Civ. Prac. & Rem. Code § 38.001(8).  As conditions precedent to recovering attorneys' fees, (1) Defendants must be represented by counsel; (2) the claim must be presented to the opposing party; and (3) payment for the amount owed must not have been paid prior to the thirtieth day after presentation of the claim.  Tex. Civ. Prac. & Rem. Code § 38.002.  The party seeking attorneys' fees bears the burden of pleading and proving presentment.  Busch v. Hudson & Keyse, LLC, 312 S.W.3d 294, 300 (Tex. App.--Houston [14 Dist.] 2010, no pet.) (citing Ellis v. Waldrop, 656 S.W.2d 902, 905 (Tex. 1983)).  Plaintiff has offered no summary judgment evidence to challenge Defendants' claim for attorneys' fees.

Counsel for Defendants submitted an affidavit in support of the claim for attorneys' fees.[39]  The affidavit, however, is silent

---

[39]      See Doc. 39-4, Ex. F to Defs.' Cross Mot. for Summ. J., Nathan Steadman Aff.

on the element of presentment.[40]   Because Defendants have not satisfied their burden of pleading and proving presentment, summary judgment as to Defendants' claim for attorneys' fees is **DENIED**.

### IV.   Conclusion

Based on the foregoing, the court **GRANTS** Plaintiff's cross-motion for summary judgment and **GRANTS IN PART** and **DENIES IN PART** Defendants' cross-motion for summary judgment.

**SIGNED** in Houston, Texas, this <u>13</u>th day of January, 2012.

Nancy K. Johnson
United States Magistrate Judge

---

[40]    See id.

22